

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ADDIE L. JOHNSON, | No. CV 06-6556-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 16, 2006, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on October 30, 2006, and October 31, 2006.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 20, 2007, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

---

[1]  Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

II.

## BACKGROUND

Plaintiff was born on March 25, 1945. [Administrative Record ("AR") at 90, 111.]  She completed two years of college and has past work experience as a manager and an airfreight agent. [AR at 103, 108.]

On January 15, 2002, plaintiff filed her application for Disability Insurance Benefits, alleging that she had been unable to work since November 30, 2000, due to carpal tunnel syndrome.  [AR at 90-92, 102.]  After a denial of her application at the initial level and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 30-35, 37-40, 41.] Hearings were held on June 26, 2003, and August 25, 2003, at which time plaintiff appeared with counsel and testified.  [AR at 443-77, 478-503.]  A vocational expert also testified at the August 25, 2003, hearing.  [AR at 465-76.] On September 18, 2003, the ALJ determined that plaintiff was not disabled.  [AR at 65-72.] Plaintiff requested a review of the ALJ's decision, and on September 10, 2004, the Appeals Council remanded the case to the ALJ to consider the third party statement of plaintiff's husband, further evaluate plaintiff's subjective complaints, consider plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert. [AR at 80-81.]

The post-remand hearing was held on February 17, 2005, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 504-13.]  On February 25, 2005, the ALJ determined that plaintiff was not disabled.  [AR at 14-21.]  When the Appeals Council denied review on August 15, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.]

III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

1   evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

2   60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

3        In this context, the term "substantial evidence" means "more than a mere scintilla but less

4   than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

5   adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

6   1257.  When determining whether substantial evidence exists to support the Commissioner's

7   decision, the Court examines the administrative record as a whole, considering adverse as well

8   as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

9   Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

10   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

11   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

12

13                                      IV.

14                       **THE EVALUATION OF DISABILITY**

15        Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

16   to engage in any substantial gainful activity owing to a physical or mental impairment that is

17   expected to result in death or which has lasted or is expected to last for a continuous period of at

18   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

19

20   **A.    THE FIVE-STEP EVALUATION PROCESS**

21        The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22   whether a claimant is disabled.  20 C.F.R. § 404.1520; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th

23   Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether

24   the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

25   and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity,

26   the second step requires the Commissioner to determine whether the claimant has a "severe"

27   impairment or combination of impairments significantly limiting her ability to do basic work

28   activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has

3

a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  20 C.F.R. § 404.1520; Lester, 81 F.3d at 828 n.5.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity since the alleged onset date of the disability.  [AR at 15.]  At step two, the ALJ concluded that plaintiff has, in combination, the "severe" impairment of right elbow lateral epicondylitis, degenerative disc disease of the cervical spine, mild deQuervain's tenosynovitis of the right wrist, bilateral lateral epicondylitis, right greater than the left, and mild ulnar neuritis of the right elbow.  [Id.]  At step three, the ALJ determined that plaintiff's impairment does not meet or equal any impairment in the Listing.  [Id.]  The ALJ further opined that plaintiff retained the residual functional capacity[2] to perform sedentary work,[3] with the avoidance of repetitive pushing/pulling

_____

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is

with her right dominant hand and reaching or lifting above her right shoulder level.  [AR at 20.]
The ALJ further found that plaintiff is unable to return to her past relevant work (step four).  [AR
at 19, 21.]  At step five, the ALJ found that there are a significant number of jobs in the national
economy that plaintiff can perform.  [AR at 15, 20.]  Thus, the ALJ found plaintiff not disabled.  [AR
at 20-21.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in his failure to: (1) consider the testimony of plaintiff's
husband; (2) provide adequate reasons for finding plaintiff's testimony not credible; (3) assess
plaintiff's subjective claims of disabling pain; and (4) properly assess plaintiff's residual functional
capacity.  Joint Stipulation ("Joint Stip.") at 3-4.  For the reasons set forth below, the Court agrees
with plaintiff and remands this matter for further proceedings.

## A.    LAY WITNESS TESTIMONY

Plaintiff contends that the ALJ erred in not considering the testimony submitted by plaintiff's
husband, Joshua Johnson, on July 8, 2003.  Joint Stip. at 4-7.  Mr. Johnson, who submitted his
testimony by declaration, wrote that plaintiff used to do housework, cook, garden, and volunteer
at church, but can no longer do any of these activities.  [AR at 139-40.]  He also testified that
plaintiff rarely socializes and generally leaves her home only in emergency situations.  [AR at 140.]
Finally, he testified that plaintiff has severe headaches and trouble with sleeping due to pain in her
hands that "then goes up to her head."  [Id.]  The ALJ did not believe that plaintiff's activities were
restricted to the degree testified to by Mr. Johnson.  [AR at 19.]

In the decision, the ALJ did not give weight to Mr. Johnson's statements based on several
grounds.  First, the ALJ observed that the "positive objective observations" were "sparse and do

---

defined as one which involves sitting, a certain amount of walking and standing is often necessary
in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally
and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a) and 416.967(a).

not correlate such a restricted life style." [AR at 19.]  The ALJ also found Mr. Johnson's remarks to be conclusory and without adequate foundation.  [Id.]  Finally, the ALJ noted Mr. Johnson's pecuniary interest in the outcome of the case, which he found to reflect poorly on the witness' testimony.  [AR at 19.]  Plaintiff contends that these reasons do not withstand scrutiny.

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d).  Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . . [T]his is particularly true of witnesses who view the claimant on a daily basis . . .").  An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file."  Social Security Ruling ("SSR")[4] 88-13; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so.  Dodrill, 12 F.3d at 919.

Here, the Court finds that the ALJ failed to give any adequate reasons for rejecting Mr. Johnson's testimony.  First, the ALJ noted that Mr. Johnson's positive objective observations were "sparse and do not correlate such a restricted life style." [AR at 19.]  The Court notes that plaintiff first presented Mr. Johnson as a witness at the June 26, 2003, hearing, at which time the ALJ waived the right to cross-examine him and asked plaintiff's counsel to submit his testimony in the

---

[4]    Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    form of a sworn statement.  [AR at 502-03.]  The fact that Mr. Johnson was made available to

2    testify and the ALJ could have questioned him at length about his observations renders the ALJ's

3    criticism of the testimony as "sparse" in error.  [AR at 19.]  The ALJ, moreover, did not explain with

4    any specificity how Mr. Johnson's comments do not correlate with the limitations he outlined.  As

5    such, the Court cannot evaluate whether the reason provided is sufficient.  Accordingly, the

6    rejection of Mr. Johnson's testimony based on its sparse content is not supported by substantial

7    evidence.

8         The ALJ also found Mr. Johnson's remarks to be conclusory and without adequate

9    foundation.  [AR at 19.]  At the beginning of the declaration, Mr. Johnson writes that he is married

10   to plaintiff, they have been married since 1964, and that he makes the declaration based on his

11   own knowledge.  [AR at 139.]  The Court finds that these statements give adequate foundation

12   to his subsequent observations of plaintiff's past activities and her current functioning.  [AR at 139-

13   40.]  Again, the Court notes that the ALJ could have questioned Mr. Johnson further to lay what

14   the ALJ would have considered an adequate foundation, but waived his ability to do so by asking

15   plaintiff's counsel to submit Mr. Johnson's testimony in the form of a sworn statement.  [AR at 502-

16   03.]  As such, the ALJ's statement that Mr. Johnson's remarks are conclusory could have been

17   remedied if he examined the witness himself at the hearing.  The ALJ, moreover, could have also

18   convened a supplemental hearing to further question Mr. Johnson, but chose not to do so.  As

19   such, the Court also rejects this ground for discrediting Mr. Johnson's testimony.

20        Finally, the ALJ noted Mr. Johnson's pecuniary interest in the outcome of the case as a

21   ground for rejecting his opinion.  [AR at 19.]  As noted above, lay witness testimony by friends and

22   family members who have the opportunity to observe a claimant on a daily basis "constitutes

23   qualified evidence" that the ALJ must consider.  Sprague, 812 F.2d at 1231-32.  Courts give

24   special weight to the opinion of witnesses who observe a claimant on a daily basis.  Dodrill, 12

25   F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering

26   . . . .  [T]his is particularly true of witnesses who view the claimant on a daily basis. . .").  The fact

27   that Mr. Johnson may have a financial interest in the outcome of the case is not a legitimate

28   reason to reject his statements.  This reason would apply to every spouse and dependent family

1  member who would ever supply testimony or statements.  The regulations clearly include spouses

2  as "other sources" who may provide evidence.  The ALJ's rationale would effectively eliminate

3  them from the list of competent evidence-givers, and would render their statements, instead of

4  being of "particular" value, of no value at all.  There is no evidence here, let alone substantial

5  evidence supported by the record, that Mr. Johnson was exaggerating his statements based on

6  a financial motive.  As such, the Court rejects the ALJ's reasons for rejecting Mr. Johnson's

7  opinion.  Remand is warranted on this issue.

8

9  **B.    PLAINTIFF'S CREDIBILITY**

10       Plaintiff argues that the ALJ failed to state any clear and convincing reasons for finding her

11  testimony "not totally credible." [AR at 20.]  In the decision, the ALJ found that plaintiff's volunteer

12  work with her church demonstrated a capacity to engage in work. [AR at 18.]  The ALJ also noted

13  that the objective medical records and plaintiff's unremarkable and sporadic treatment

14  demonstrate that her condition was not as severe as she complained.  [AR at 18-19.]  Plaintiff

15  contends that the reasons cited by the ALJ lack merit.  As discussed below, the Court agrees.

16       Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to

17  deny benefits, as it was here, the ALJ must make explicit credibility findings.  <u>Rashad v. Sullivan</u>,

18  903 F.2d 1229, 1231 (9th Cir. 1990); <u>see</u> <u>Albalos v. Sullivan</u>, 907 F.2d 871, 874 (9th Cir. 1990)

19  (implicit finding that claimant was not credible is insufficient); <u>see</u> <u>also</u> <u>Lester</u>, 81 F.3d at 834 (the

20  ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity

21  of symptoms when there is medical evidence of an underlying impairment).  Indicia of unreliability

22  upon which an ALJ may rely to reject a plaintiff's subjective complaints include: (a) activities

23  inconsistent with a finding of a severe impairment; (b) discrepancies in a plaintiff's statements;

24  (c) exaggerated complaints; and (d) a conservative treatment regimen.  <u>See</u> <u>Fair v. Bowen</u>, 885

25  F.2d 597, 603-04 (9th Cir. 1989) ("[I]f, despite his claims of pain, a claimant is able to perform

26  household chores and other activities that involve many of the same physical tasks as a particular

27  type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not

28  prevent the claimant from working."); <u>Brawner v. Secretary of Health and Human Services</u>, 839

F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff testified to inflammation in the elbow area of her right arm, consistent neck pain, and headaches resulting from the neck pain. [AR at 507-08.] Plaintiff also testified that she experiences difficulty with sleeping due to the neck pain, and that she gets headaches two or three times a month that last three to four hours if she takes medicine and lies down in the dark. [AR at 508-09, 511.]

1.   Plaintiff's Activities

The ALJ rejected plaintiff's credibility based in part on her volunteer work with her church, namely her administrative work and use of a computer. The ALJ found that the activities "while not done on a regular and scheduled basis, further demonstrate her capacity to engage in work." [AR at 18.]

Plaintiff's testimony at the hearing indicated that her ability to perform the activities mentioned by the ALJ was more limited in scope than determined by the ALJ in his decision. Plaintiff testified that for a two week period in December 2004, she used a computer while doing volunteer work at her church. [AR at 510.] When questioned further, plaintiff testified that she worked for eight hours total in the two week period, during which time her arm became "very inflamed" and she sought medical attention. [Id.] Plaintiff also testified that she used to work as a trustee for the church, which required her to count money every Sunday, prepare deposits to the bank, and do inventories of church equipment and emergency evacuation plans. [Id.] Plaintiff testified that she quit the trustee position, which required four to five hours a week, because it aggravated the pain in her right arm. [AR at 510-11.] The Ninth Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to be disabled. See Fair, 885 F.2d at 603 ("The Social Security Act does not require that claimant be utterly incapacitated to be eligible for benefits."); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need

1  to be utterly incapacitated in order to be disabled.").  The limited activities performed by plaintiff

2  were minimal and temporary, and in fact aggravated her condition.  Furthermore, there was no

3  showing that these activities readily transfer to the workplace environment.[5]  As such, substantial

4  evidence does not support the ALJ's finding that plaintiff's volunteer activities rendered her

5  testimony not credible.

6         2.  <u>Medical Treatment</u>

7         The ALJ also rejected plaintiff's testimony of a disabling impairment based, in part, on her

8  medical treatment.  [AR at 19.]  Specifically, the ALJ contends that the treatment that plaintiff

9  received did not comport with her complaints of disabling symptoms.  [AR at 18.]  First, the ALJ

10 noted that updated documents from Kaiser Permanente ("Kaiser") do not provide support for

11 plaintiff's subjective complaints.  [<u>Id.</u>]  The ALJ also noted that plaintiff did not receive regular and

12 continuous treatment from any orthopedist for her back and right upper extremity pain since May

13 22, 2001, when she last saw Dr. Ralph N. Steiger.  [<u>Id.</u>]  Finally, the ALJ cites to the fact that

14 plaintiff has not been referred to or sought treatment at a pain control clinic.  [<u>Id.</u>]  For these

15 reasons, the ALJ rejected plaintiff's credibility.

16        At the February 17, 2005, hearing, plaintiff testified that she receives treatment through

17 Kaiser.  [AR at 507.]  Plaintiff further testified that her treatment consists of on-site therapy and

18 suggestions for continuing that therapy at home.  [AR at 507-08.]  She also indicated that doctors

19 prescribed her Naprosyn[6] to treat her pain and Flexeril[7] to treat the inflammation.  [AR at 508.]

20 _____

21     [5]  When an ALJ evaluates a claimant's credibility based on his or her daily activities, courts
   have determined that the ability to do certain chores does not readily transfer to sustaining
22 employment.  <u>See</u> <u>Fair</u>, 885 F.2d at 603 (cautioning that "many home activities are not easily
   transferable to what may be the more grueling environment of the workplace, where it might be
23 impossible to periodically rest or take medication").

24     [6]  Naprosyn is an "anti-inflammatory drug used to relieve pain and swelling (inflammation) from
25 various conditions.  It is used to treat headaches, muscle aches, backaches, tendonitis, dental
   pain, and menstrual cramps.  It also reduces pain, swelling, and joint stiffness caused by arthritis,
26 bursitis, and gout attacks."  http://www.webmd.com/medical_information/drug_and_herb/
   default.htm (search "Find A Drug, By Name" for "Naprosyn Oral"; then follow "Uses" tab).
27

28     [7]  Flexeril is a muscle relaxant that is "used along with rest and physical therapy to decrease

Plaintiff also takes Ibuprofen[8] for her headaches.  [Id.]  Finally, plaintiff testified that while she did not go to the hospital every week, she went "as needed."  [AR at 511.]  When questioned by the ALJ if she went to the hospital on a "regular" and "consistent" basis, plaintiff replied, "[p]retty much."  [Id.]

It is well settled that an ALJ may consider the amount and degree of a claimant's treatment in assessing his or her credibility.  Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors include limited treatment and minimal use of medications).  Here, the Court disagrees that plaintiff's medical records from Kaiser do not provide support for her subjective complaints.  [AR at 18.]  To the contrary, plaintiff's medical records, which included an emergency room visit, show that she consistently complained of and sought treatment for pain.  [AR at 380-412.]  The ALJ also described plaintiff's treatment as "sporadic," although she testified that she sought treatment for her complaints "pretty much" on a regular and consistent basis.  [AR at 19, 511.]  Indeed, the medical records from Kaiser indicate that plaintiff continued to seek medical treatment even after she stopped seeing Dr. Steigler.  [AR at 240-68, 325-40, 374-412.] Finally, the Court also notes that plaintiff was prescribed both Naprosyn and Flexeril, and was also taking Ibuprofen at the time of the hearing to treat her pain.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to reject patient's credibility and noting that plaintiff "has not required prescription pain medication"); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility and noting pain did not require prescription medications); but see Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting plaintiff's credibility and stating, "More particularly, [the ALJ] remarked that [plaintiff] had not been prescribed narcotic pain

---

muscle pain and spasms associated with strains, sprains or other muscle injuries." http://www.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Flexeril Oral"; then follow "Uses" tab).

8    Ibuprofen is "a nonsteroidal anti-inflammatory drug (NSAID), which relieves pain and swelling (inflammation).  It is used to treat headaches, muscle aches, backaches, dental pain, menstrual cramps, arthritis, or athletic injuries." http://www.webmd.com/medical_information/drug _and_herb/default.htm (search "Find A Drug, By Name" for "Ibuprofen"; follow "Ibuprofen – Oral"; then follow "Uses" tab).

1   medication, as would be expected if she suffered from intense, chronic pain.").  Overall, while

2   plaintiff did not seek treatment from an orthopedist after 2001 and never received a referral to a

3   pain clinic, the Court finds that her regular treatment with therapy and prescription pain

4   medications do not warrant a rejection of her credibility.

5

6   **C.    PAIN TESTIMONY**

7          Plaintiff also contends that the ALJ failed to properly assess her subjective claims of

8   disabling pain.  In the decision, the ALJ cited to the minimal objective medical evidence supporting

9   plaintiff's subjective complaints as a ground for rejecting those complaints.   [AR at 18.]

10  Specifically, the ALJ noted that testing of plaintiff's cervical spine showed only moderate

11  impairment and that numerous x-rays of her elbows and wrists were normal.  [AR 18-19.]

12         An ALJ cannot rely on an absence of disability findings to reject a plaintiff's credibility.  A

13  claimant need not produce evidence of pain other than her own subjective testimony.  Smolen,

14  80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain or fatigue

15  itself, or the severity thereof.").   Nor must a claimant present objective medical evidence of a

16  causal relationship between the impairment and the type of symptom.  See Smolen, 80 F.3d at

17  1282; see also Johnson, 60 F.3d at 1433 ("[O]nce an impairment is medically established, the ALJ

18  cannot require medical support to prove the severity of the pain.").  Rather, the claimant need only

19  "produce objective medical evidence of an underlying impairment which could reasonably be

20  expected to produce the pain or other symptoms alleged."  Bunnell v. Sullivan, 947 F.2d 341, 344

21  (9th Cir. 1991) (internal quotations omitted).  This approach reflects the Ninth Circuit's recognition

22  of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80

23  F.3d at 1282, and that "[t]he amount of pain caused by a given physical impairment can vary

24  greatly from individual to individual."  Id. (internal quotations omitted).

25         Put another way, "[a]n individual's statements about the intensity and persistence of pain

26  or other symptoms or about the effect the symptoms have on his or her ability to work may not be

27  disregarded solely because they are not substantiated by objective medical evidence."  SSR

28  96-7p.  Instead, a claimant must demonstrate two things:  "(1) [she] must produce objective

medical evidence of an impairment or impairments; and (2) [she] must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." SSR 96-7p; see also SSR 96-3p.

In this case, the ALJ found only minimal objective findings to support plaintiff's testimony regarding her subjective complaints. [AR at 18.] But once a claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Lester, 81 F.3d at 834. Here, the ALJ explicitly determined that plaintiff suffered from the severe impairment of right elbow lateral epicondylitis, degenerative disc disease of the cervical spine, mild deQuervain's tenosynovitis of the right wrist, bilateral lateral epicondylitis, right greater than the left, and mild ulnar neuritis of the right elbow. [AR at 15.] Thus, unless there is affirmative evidence showing that plaintiff is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834.

In the instant case, there is a significant amount of objective evidence of plaintiff's impairments to support her subjective complaints. On March 30, 1999, an MRI of plaintiff's cervical spine revealed a posterior displacement of C3 upon C4 and some mild osteophytosis at the C5-6 level posteriorly. [AR at 158.] Another MRI performed on January 10, 2001, found degenerative disc disease, with mild secondary spondylosis and some spondylitic narrowing of the central canal at C3-4, C5-6, and C6-7. [AR at 212-13.] On April 28, 2003, an MRI found degenerative disc disease at C3-C4 and C5-C6, and mild retrolisthesis of C3 over C4. [AR at 349.] A CT scan of plaintiff's cervical spine on November 27, 2004, revealed moderate C3-C4 disc space narrowing, but no significant degenerative osteophyte formation, no compression fracture, and no prevertebral soft tissue swelling. [AR at 375.] Furthermore, plaintiff's treating orthopedist, Dr. Steiger, examined plaintiff and diagnosed her with overuse syndrome of the right upper extremity, musculoligamentous sprain of the cervical spine, lateral epicondylitis of the right elbow, de Quervain's tendinitis at the right wrist, and disc bulges at C-6, C6-7. [AR at 172, 176, 181, 185, 194, 199, 201, 202, 203, 206.] In addition to these diagnoses, Dr. Steiger also found plaintiff to be temporarily totally disabled after multiple examinations. [AR at 172, 176, 181, 185, 199, 201,

202, 203.] These well-documented impairments could reasonably be expected to produce the degree of pain of which plaintiff complained. Thus, the ALJ erred in rejecting plaintiff's subjective complaints of pain on the basis of the "minimal" objective medical evidence. Remand is warranted on this issue.[9]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to allow for the proper evaluation of plaintiff's husband's statements, plaintiff's credibility, and plaintiff's pain testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September ____, 2007

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[9]   Plaintiff also contends that the ALJ erred in assessing her residual functional capacity. As the ALJ's evaluation of plaintiff's credibility affects this other claim, and the Court remands this action on the credibility issue, the Court will not address the residual functional capacity claim at this time. Rather, this issue should be re-evaluated on remand. Furthermore, the Court notes that the ALJ failed to comply with the Order of the Appeals Council that required the ALJ to "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." [AR at 81.] According to 20 C.F.R. § 416.1477(b), "[t]he administrative law judge shall take any action that is ordered by the Appeals Council . . . ." See Ruiz v. Apfel, 24 F.Supp.2d 1045, 1050 (C.D. Cal. 1998) (holding that "the ALJ is bound to follow the Appeals Council's order"). This issue should also be addressed on remand.